EASTERN DIST.
June, 1835.

LAFON
vs.
WHITE ET AL.

Universal legatees having the seizin of the estate under the will, hold the place of heirs instituted by testament.

---

## LAFON *vs.* WHITE ET AL.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where a testator, having two daughters, bequeaths one-fifth of all his property to one, and directs the balance to be equally divided between the two heirs instituted under his will, the first will be entitled to three-fifths, and the second to two-fifths of the whole succession. The first is considered as taking an *increased* portion, rather than a legacy for the one-fifth

Money paid by a purchaser of property from which he is evicted, and which went to pay a debt of the owner, may be considered as benefiting his succession to the second inheritance; and the heir inheriting indirectly, or from the heir of the original ancestor, must refund in proportion as he acquires from that succession.

This is a petitory action, claiming in the alternative, a tract of land or its price, in the possession of the defendant, Maunsel White, and which he purchased from the vendees of the late Joshua Lewis.

The plaintiff claims, as heir of her father, the late Jean Pierre Lafon, one moiety of a tract of land, on the Missis-

63

sippi, below New-Orleans, having eighteen and a half arpents front, by forty in depth, which her said father acquired at the sale of B. Lafon's succession, and as universal heir in 1821; that her father died in 1822, having made a will, in which he left all his property to her and her sister, his only heirs. That Joshua Lewis, without having any valid title to this land, sold it in 1828, to B. F. Smith, for five hundred dollars per arpent front, or nine thousand two hundred and fifty dollars, from whom it came through several hands, to the defendant, M. White, who assumed Smith's obligation to Lewis. She prays that White be condemned to pay her the sum of four thousand six hundred and twenty-five dollars, with interest; or that she be declared the owner of an undivided half of said tract of land.

White set up title under his vendors, which was traced to Joshua Lewis, deceased, whose heirs, with the intermediate vendors were cited in warranty. Lewis's heirs pleaded the general issue and prescription, and set up title to the premises, under a sale for taxes, &c.

The evidence shows that in 1826, Joshua Lewis bought all the interests of the heirs of B. Lafon, in the land, at marshal's sale, under an execution and judgment of the United States District Court, rendered in a suit of the United States vs. the heirs of B. Lafon, for eleven hundred dollars    This sale was viewed as a nullity, and the title of J. .P. Lafon's heirs declared good to the land. The title of the plaintiff and the portion she received under her father's will, of his succession, is fully set out, in the opinion of the court.

The District Court decreed to the plaintiff, two-fifths of the eighteen and a half arpents of land claimed, but before taking possession required her to pay the two-fifths of eleven hundred dollars to Lewis's heirs, &c. The plaintiff, being dissatisfied with this judgment, appealed.

*L. Janin,* for the plaintiff.

1. The plaintiff claims in the alternative, either the undivided half of a tract of land of eighteen and a half arpents front, and that a partition be ordered, or the price, which the

defendant has agreed to pay for it to his vendor, and which is yet entirely unpaid. In order to avoid the expenses and contingencies of a partition and re-sale, the plaintiff would prefer the price to the land, and contends that she is entitled to this choice. The defendant cannot complain of this, for his voluntary contract with his vendor, who is a party to this suit, is thereby confirmed, and his title perfected. The warrantor cannot be injured by it, for if the defendant is evicted, he (the warrantor) can never loose less than the price his vendee has paid, or agreed to pay, *Civil Code*, 2483; but he may loose more. Melançon's heirs *vs.* Duhamel, 7 *Louisiana Reports*, 290.

Lewis, who sold the plaintiff's land to the defendant, may be compared to a *negotiorum gestor*, whose unauthorised act the principal may ratify, and then it will bind the other contracting party. In several cases a plaintiff has been allowed to claim directly from a succession, the price for which his property has been sold by the representative of the estate, under the belief that it belonged to it. Donaldson *vs.* Rust, 6 *Martin*, 271. Baillio *vs.* Wilson, 8 *Ibid.*, *N. S.*, 345.

2. Notwithstanding Pierre Lafon's testament, by which he instituted his two daughters his only *heirs*, leaving besides one-fifth of his whole property to Jeanne Philippe Lafon, the plaintiff is entitled to one-half, and not two-fifths of the land. For Jeanne Philippe Lafon was for that fifth, a legatee by universal title; such a legacy for a "quote part" does not transfer the title to the immoveables of the estate; it gives to the legatee, an action for the delivery of the legacy, or an hypothecary action, but not an action of revendication. That legacy may be more, or it may be less than one-fifth of the immoveables, or of any particular immoveable of the succession; it may be nothing at all, if the succession is insolvent, but it is, at all events, a legacy of a sum of money, not of a specific and determinate thing. Notwithstanding such a legacy, the title to the land remains, as well as the action of revendication, exclusively in the heirs. Such is the decision of Spanish writers, based on the nature of the legacy.

EASTERN DIST.
June, 1835.

LAFON
vs.
WHITE ET AL.

*Partidas* 5, *tit.* 5, *l.* 55, *glos.* 5 ; 2d and 5th *alinea.* *Hermosille, page* 634, *No.* 17; *page* 642, *No.* 43. See also, *Delvincourt, vol.* 2, *page* 320.

3. Thus this matter was understood by Lewis, who, in the suit instituted by him against Jeanne *Philippe* Lafon, claimed the rescission of the sale, on the ground that the defendant had a legitimate sister in France, who was entitled to one-half of the land; on the same ground was the judgment of the Parish Court rendered. Jeanne Philippe Lafon, in her suit against Smith, to set the sheriff's sale to Lewis aside, claimed one-half of the land, not three-fifths. See 3 *Louisiana Reports,* 473.

4. The warrantors rely on a sale under execution by the marshal of the District Court of the United States, which is null and void ; for the judgment under which this sale took place was rendered six years after Lafon's death, in a suit to which Lafon was no party, and in which neither he nor his representatives had ever been cited. 4 *Louisiana Reports,* 207. 6 *Martin, N. S.,* 514. No execution can issue until after service of judgment, 9 *Martin,* 517, 3 *Ibid., N. S.,* 247; and notice of seizure must be given. Both were alike impossible under the circumstances of this case.

5. The plaintiff cannot be condemned, as has been done by the District Court, to pay Lewis's heirs two-fifths, or any part of the eleven hundred dollars which Lewis paid to the marshal. He paid, indeed, only eight hundred and twenty dollars. See his receipts for three hundred and fifty dollars, which were returned to him. The judgment under which the sale took place, was a nullity, and can produce no effect against Barthelemy Lafon's heirs. So it was considered by the district judge in the outset of his opinion ; towards the end he gives it effect and enforces it against the plaintiff. It is quite sufficient to observe, that no such claim was made, either by the defendant or the warrantors in their answers.

*Conrad* and *Strawbridge* for defendant and warrantors.

*Mathews J.*, delivered the opinion of the court.

In this case the plaintiff claims, as heir instituted by the will of her father, J. P. Lafon, to one-half of his succession, an undivided moiety of a tract of land having eighteen and one-half arpents front on the Mississippi, with the ordinary depth of forty. The defendant White, called in warranty the heirs of Lewis, who undertook to support the title under which he holds. A judgment was rendered in the court below, which decreed to the plaintiff two-fifths of the land claimed, allowing time to ascertain by actual measurement the real quantity, &c. No judgment was rendered against the warrantors in favor of the defendant. From this judgment the plaintiff appealed, and complains that it is erroneous in not adjudging to her half of the land in question, and also, in compelling her to refund a portion of the price paid by the ancester of the warrantors for the whole tract, on an adjudication to him by the marshal, in pursuance of an execution which issued on a judgment rendered by the District Court of the United States, &c.

It appears by the evidence of the case, that the property now in contestation belonged originally to B. Lafon, who by will, instituted his brother, J. P. Lafon, his sole heir, who subsequently died, after having made his will, by which he instituted his two daughters, one the present plaintiff, and the other Jeanne Philippe Lafon, his heirs. To the latter the testator bequeathed one-fifth of all his property, and directed the balance to be equally divided between the two heirs as instituted by the will, and appointed his daughter Jeanne Philippe, executrix, &c.

These dispositions of the testament certainly gave to his heir three-fifths of the whole succession of the deceased, and under them she acquired as certain and clear a right to the one-fifth given as a legacy, as she did to the portion for which she was instituted heir. It is, in truth, rather to be considered in the light of an increased quantity of a portion of his estate, given by the father to one of his children, more than that bequeathed to the other; in other words, it was a *mejora* as known to the Spanish law, and not a simple legacy

*Where a testator, having two daughters, bequeaths one-fifth of all his property to one and directs the balance to be equally divided between the two heirs, instituted under his will, the first will be entitled to three-fifths and the second to two-fifths of the whole succession. The first is considered as taking an increased portion, rather than a legacy for the one-fifth.*

granted by the testator to a person in whom no rights vested as heir.

How the executrix administered the succession does not appear; it seems however, that *no partition* ever took place between the heirs in relation to that part of it situated in this country. She assumed to sell the whole land now in dispute to the ancestor of the warrantors; this sale was rescinded and the purchaser subsequently acquired, by judicial sale, all the right and title which she had in it, amounting in our opinion to three-fifths, in which she held the *dominium directum* as heir, whose portion was increased to the amount of one-fifth by the testamentary dispositions of her ascendant.

These considerations we deem sufficient to terminate the dispute relating to the extent of title acquired by the purchase of the rights of the heir Jeanne Philippe Lafon.

The next question has reference to that part of the judgment of the court below, which ordered the plaintiff to refund two-fifths of the price paid by the purchaser at the marshal's sale. This sale was treated as a nullity by that court, and from the evidence in relation to it, we believe the court in this respect acted correctly. But the money actually paid, (about eight hundred dollars) went to pay a debt due by B. Lafon, and may be considered as having benefited his succession to that amount; and as the plaintiff inherits indirectly from him, we see no injustice in compelling her to refund in proportion as she acquires from that succession.

*Money paid by a purchaser of property from which he is evicted, and which went to pay a debt of the owner, may be considered as benefiting his succession to the second inheritance; and the heir inheriting indirectly, or from the heir of the original ancestor, must refund in proportion as he acquires from the succession.*

These principles being settled, it only remains to modify the judgment of the court below, according to the wishes and consent of the parties to the suit. The plaintiff claims in the alternative, one-half of the land or half the price for which it sold; and the parties now prefer that judgment should be rendered for the price to be paid by the last purchaser to the plaintiff.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, and by consent of parties, and in pursuance of the justice of the case, it is

ordered, adjudged and decreed, that the plaintiff and appellant do recover two-fifth parts of the price which the defendant White is bound to pay for nine and one-fourth arpents front of land, having the ordinary depth of forty; being the same which he holds under titles derived from the late Joshua Lewis, &c., amounting to the sum of three thousand seven hundred dollars, from which must be deducted two-fifths of eight hundred dollars, leaving the sum of three thousand three hundred and eighty dollars, to be paid according to the terms of the contract of sale, which sum when paid, shall discharge *pro tanto*, the said White from the obligations arising from his contract of purchase, &c. The warrantors to pay the costs of the District Court; those of this court to be borne by the appellant.